# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

SQUARE D COMPANY,
                                        **Plaintiff,**

-vs-                                                    Case No.  A-07-CA-810-SS

PIONEER BREAKER & SUPPLY CO., *et al.*,
                                        **Defendants.**
_____

## **O R D E R**

BE IT REMEMBERED that on the 17th day of December 2009, the Court called the above-styled cause for a status conference, and the parties appeared either in person or through counsel. Before the Court were Defendant Trans-Discovery's Motion for Summary Judgment [#134], Plaintiff's memorandum in opposition thereto [#139], and Trans-Discovery's supplement thereto [#169]; Defendant Gonzalez's Opposed Motion to Dismiss for Lack of Jurisdiction [#153], his appendix thereto [#156], his affidavit in support [#157], and Plaintiff's response in opposition thereto [#176]; Defendant Gonzalez's Opposed Motion for Summary Judgment [#154] and Plaintiff's response in opposition thereto [#175]; Defendant Gonzalez's Opposed Motion to Sever [#161] and Plaintiff's response in opposition thereto [#177]; Defendant Trans-Discovery's Motion to Sever [#170] and Plaintiff's response in opposition thereto [#179]; Plaintiff's Motion for Partial Summary Judgment [#180]; Defendant Christina Toldy Duncan's Motion for Summary Judgment [#182]; and Defendants Pioneer Breaker and Tamas Toldy's Motion for Partial Summary Judgment [#183].

As an initial matter, the parties represented to the Court at the scheduling conference that Defendants Trans-Discovery and Christina Toldy Duncan have settled with the Plaintiff, and therefore

1

Defendant Trans-Discovery's Motion for Summary Judgment [#134], Defendant Trans-Discovery's Motion to Sever [#170], and Defendant Christina Toldy Duncan's Motion for Summary Judgment [#182] are all DISMISSED AS MOOT. Thereafter, having considered the remaining motions and the responses and replies thereto, the case file as a whole, and the applicable law, the Court enters the following opinion and orders.

**General Background**[1]

Plaintiff Square D Company ("Plaintiff") is a corporation that manufactures and supplies electrical distribution products for commercial and consumer applications. It distributes those products only through a network of authorized distributors. 1st Am Compl. at ¶ 14. Plaintiff has various registered trademarks, including the "QO" mark, the "Square D mark," and the "square circumscribing a square-shaped D." *See* Trademark Regs. Nos. 279,120; 650,436; 798,060; 870,395; and 1,651,377). Plaintiff brings suit against Defendants Pioneer Breaker and Control Supply, Corp. ("Pioneer Breaker"), Tamas Toldy ("Toldy"), Gordon E. Vaught d/b/a ABN Direct ("Vaught"), Surtidora Electrica del Norte SA DE C.V. ("Surtidora"), and Humberto Gonzalez d/b/a HESCO ("Gonzalez") (collectively, "Defendants") for the sale of counterfeit goods in violation of the Lanham Act, 15 U.S.C. § 1114(1), which prohibits trademark infringement, and § 1125(a), which prohibits false designation of origin.[2]

Defendants Pioneer Breaker and Toldy are citizens of Austin, Texas, and neither of them are authorized Square D distributors. 1st Am. Compl. at ¶¶ 2-3. Pioneer Breaker is a wholesaler of

---

[1]The following is taken from Plaintiff's First Amended Complaint, and therefore represents only the allegations of Plaintiff.

[2]Plaintiff also originally sued for civil violations of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c)-(d), and for common law civil conspiracy. However, it indicated at the status conference it has dropped those claims against all Defendants.

electrical products, including circuit breakers, nationwide, and Toldy is the President of Pioneer Breaker. *Id.* at ¶ 2. Defendant Vaught also resides in Austin, Texas and does business under the name "ABN Direct." *Id.* at ¶ 5. Vaught imports, purchases, sells, and distributes electrical components within the United States, including Texas. *Id.* Defendant Gonzalez resides in Mexico (although he owns property in Laredo, Texas), and also imports, purchases, sells, and distributes circuit breakers. *Id.* at ¶ 7. Defendant Surtidora is a Mexican corporation whose principal place of business is in Nuevo Laredo, Mexico. *Id.* at ¶ 6. Defendant HESCO is a "fictitious entity" owned, operated, and controlled by Gonzalez. *Id.* at ¶ 9. Neither Vaught, Gonzalez, Surtidora, nor HESCO is an authorized Square D distributor. *Id.,* at ¶¶ 6-7, 9.

### a. The Pioneer Defendants[3]

Plaintiff alleges Vaught has spent many years working in the electrical industry in Mexico. *Id.* at ¶ 29. Vaught allegedly imported and delivered counterfeit breakers to Toldy and Pioneer Breaker in Austin, Texas, who in turn sold them. *Id.* Plaintiffs allege the purchase and importation of the counterfeit breakers was done knowingly by the Pioneer Defendants. *Id.* at ¶¶ 32-33.

Specifically, from April 2005 to the present, Plaintiff alleges Vaught sold 54,400 QO® 2020 Square D circuit breakers to Pioneer Breaker and Toldy. *Id.* at ¶ 48. In turn, Pioneer Breaker sold approximately 54,400 QO® 2020 to a wholesale distributer of electrical equipment and goods in Noblesville, Indiana called Breakers Unlimited.[4] *Id.* at ¶ 46. In August of 2007, Square D inspected approximately 43,000 of the QO® 2020 breakers and determined them to be counterfeit. *Id.* Plaintiffs

---

[3]The "Pioneer Defendants" are Vaught, Toldy, and Pioneer Breaker.

[4]A related case involving the same Plaintiff and Breakers Unlimited is pending in the Southern District of Indiana, *Square D Co. v. Breakers Unlimited, Inc.*, Cause No. 07-CV-806-WTL-JMS. Plaintiff alleges the jury found in that case the breakers which Breaker Unlimited purchased from Pioneer Breaker were counterfeit. *Id.* at ¶ 45.

claim Vaught additionally sold 52,440 counterfeits to other entities throughout the United states, grossing revenue of $716,225. *Id.* at ¶ 49. Plaintiff claims the counterfeit breakers have a label affixed to them which "is designed to deceive customers" into believing the circuit breakers were manufactured at Plaintiff's plant in Tijuana, Mexico, but Plaintiff has inspected the breakers and believes they were actually manufactured in China. *Id.* at ¶ 31.

The Pioneer Defendants also purchased and offered for sale at least 71 counterfeit QO® circuit breakers obtained from Miami Breaker, a Florida corporation that is not an authorized Square D distributor, in 2005 or 2006. *Id.* at ¶ 54. On December 11, 2007 Plaintiff inspected those breakers from Miami Breaker claims they are counterfeit. *Id.*

### b. The Gonzalez Defendants[5]

Plaintiffs claim from May of 2005 to March of 2006, Defendants Gonzalez and HESCO bought over 25,100 counterfeit Square D breakers from Miami Breaker. *Id.* at ¶ 52. They resold some 9,600 of those counterfeit breakers, and offered some 15,500 for sale.[6] *Id.* But when the sale of the latter portion fell through, Gonzalez and HESCO returned those breakers to Miami Breaker in Florida. *Id.*

### Analysis

### I. Defendant Gonzalez's Motion to Dismiss for Lack of Jurisdiction [#153]

As stated above, Plaintiff claims Gonzalez purchased and sold counterfeit QO® 115, 120, and 130 circuit breakers in 2005 and 2006 in violation of the Lanham Act. *Id.* at ¶¶ 51-52. Gonzalez claims because all of the sales undisputedly took place in Mexico, the Lanham Act claims against him

---

[5]The Gonzalez Defendants are Surtidora, Gonzalez and HESCO.

[6]These numbers are slightly different in the dispositive motions now pending before the Court, as reflected later in this order.

must be dismissed.

### a. Legal Standard for Motion to Dismiss Under Rule 12(b)(1)

Gonzalez seeks dismissal of the claims against him for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Federal district courts are courts of limited jurisdiction, and they may only exercise such jurisdiction as is expressly conferred by federal statute. *See Le Mieux Bros. v. Tremont Lumber Co.*, 140 F.2d 387, 389 (5th Cir. 1944). Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through which subject matter jurisdiction may be challenged. Thus, the burden of establishing subject matter jurisdiction by a preponderance of the evidence rests with the party seeking to invoke it. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008) (citations omitted).

In evaluating a challenge to subject matter jurisdiction the Court is free to weigh the evidence and resolve factual disputes so that it is satisfied jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). In conducting its inquiry the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* The Court must take the allegations of the complaint as true and draw all inferences in the plaintiff's favor. *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir. 1985). Dismissal is warranted if the plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction. *See Saraw*, 67 F.3d at 569; *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### b. Background of the 2005 and 2006 Sales

Gonzalez admits he purchased a total of 2,900 breakers from Miami Breaker (on behalf of Surtidora, his Mexican corporation), in May 2005. *See* Fact. Summ. at ¶ 1. The breakers were transported from Miami, Florida to Laredo, Texas, and then to Nuevo Laredo, Mexico, where they were resold by Surtidora. *Id.* Gonzalez also admits he purchased another 22,800 breakers from Miami Breaker on behalf of Border Electric of Mexico (another company of his, which is no longer in existence) in January 2006. *Id.* at ¶ 2. The breakers were also transported to Laredo, Texas and over the border. Of these breakers, 6,512 were resold, and 16,100 were ultimately returned to Miami Breaker without being resold (because a customer cancelled their order for those breakers). *Id.* Thus, Gonzalez claims it is clear all of the breakers he received from Miami Breaker were either resold in Mexico, or crossed back into the United States to be returned to Miami Breaker. *Id.*

c.     **Subject Matter Jurisdiction under the Lanham Act**

Gonzalez claims the Court cannot exercise subject matter jurisdiction over the claims against him because they involve extraterritorial conduct, or commerce between the United States and a foreign market. The seminal case on "extraterritorial jurisdiction" under the Lanham Act is *Steele v. Bulova Watch, Co.*, 344 U.S. 280 (1952), in which the Supreme Court considered whether a district court had jurisdiction under the Lanham Act to award relief to an American corporation for trademark infringement that was "consummated in a foreign country by a citizen and resident of the United States." *Id.* at 281. The Court noted the "broad jurisdictional grant in the Lanham Act," and found its scope encompassed the defendant's activities in that case, as the defendant's "operations and their effects were not confined within the territorial limits of a foreign nation." *Id.* at 256. For instance, the Supreme Court noted he bought parts of his wares in the United States, his counterfeit products (specifically, counterfeit Bulova watches) had filtered through the Mexican border into this country, and his competing goods "might well reflect adversely on [the plaintiff]'s trade reputation in markets

cultivated by advertising in the United States and abroad." *Id.* at 286-87.

Relying on *Steele*, the Fifth Circuit has held the appropriate factors to consider in determining whether to exercise extraterritorial jurisdiction are (1) "the sufficiency of the contacts in this country and the interests of the United States, including the citizenship of the defendant," (2) "the effect on United States commerce," and (3) "the existence of a conflict with foreign law." *Am. Rice, Inc. v. Prods. Rice Mill, Inc.*, 518 F.3d 321, 327 (5th Cir. 2008) (citations omitted). The Fifth Circuit has made clear "the absence of any of these factors is not dispositive, nor are these factors the exclusive factors to be considered"; rather, these factors will necessarily be the primary elements in any balancing analysis. *Id.*; *and see Am. Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n.*, 701 F.2d 408, 414 (5th Cir. 1983).

In his motion to dismiss, Gonzalez claims the Court does not have subject matter jurisdiction over the Lanham Act claims against him because (1) he is not a citizen or resident of the United States, and (2) the unfair competition in question did not have a substantial effect on United States commerce. The Court does not agree, based on an analysis of this case in accordance with the three factors set forth by the Fifth Circuit in *American Rice*.

1.      **Sufficiency of the contacts in the United States, the interests of the United States, and the citizenship of Defendants.**

First, although Gonzalez is not a citizen of the United States, he has a substantial presence in the United States. The Court noted in a previous order the following facts about Ms. Saldana (Gonzalez's former girlfriend), and her address on King Lane in Laredo, Texas:

> The Plaintiff identifies several facts which indicate the King Lane address was, at a minimum, one of Gonzalez's usual places of abode: (1) Gonzalez's personal relationship with Saldana over at least two years; (2) Gonzalez's daughter with Saldana, who resides with Saldana at the King Lane address and whom Gonzalez admits he regularly visits at that location; (3) Gonzalez's use of the King Lane address as his mailing address in at least one public record, a warranty deed from 2001; (4) a

Mercedes registered to Gonzalez and Saldana at the King Lane address as early as 2001 and last renewed in May 2008; and (5) sworn deposition testimony from one of Gonzalez's business associates that he had lived with Saldana for years in a house in Laredo, Texas. ...Gonzalez does admit visiting his daughter at the King Lane property, listing King Lane as his mailing address in a warranty deed, and owning the Mercedes registered to him and Saldana at the King Lane address. Notably, Gonzalez does not indicate which of his properties in Laredo he does consider to be a usual place of abode, nor does he dispute he received notice of the summons from Saldana.

Jan. 23, 2009 Order [#95] at 7 (citations omitted). Furthermore, Gonzalez is the principal of at least one corporation that does business and is located in the United States, as Breaker International, which Mr. Gonzalez formed in 1999 with Ms. Saldana, is undisputedly a Texas corporation. App'x [#80] at Ex. 2 ("Gonzalez Aff."). It operates out of the same office as Trans-Discovery in Laredo, Texas (although Trans-Discovery is owned and operated solely by Ms. Saldana). Gonzalez used the Trans-Discovery address in Laredo in order to ship the breakers at issue in this lawsuit. *See* Pl.'s Resp. at Ex. 4 (shipping documents from Miami Breaker that list Gonzalez's address as 14421 Import Road, Laredo, Texas, 78045).

Also essential is the fact much of Gonzalez's conduct that allegedly violated the Lanham Act took place in the United States, as he admits he imported and transported the Miami Breaker circuit breakers within the United States (from Miami to Laredo, and then across the border). *See* Third Decl. of Gonzalez [#163] at ¶¶ 5-14. Although he claims all the ***sales*** took place in Mexico, there is no question he transported what Plaintiff alleges are counterfeit goods in the United States. If he was indeed importing and transporting counterfeit breakers in the United States, this would be considered a "use in commerce" under the Lanham Act and thus a violation of it.[7] *See* 15 U.S.C. §§

---

[7]The Lanham Act imposes liability on "[a]ny person who, on or in connection with any goods, ...***uses in commerce***" the advertised goods. *Id.* (emphasis added). These activities include the importation and transportation of counterfeit goods. 15 U.S.C. § 1127 (defining "use in commerce" as the bona fide use of a mark on goods when the goods are "sold ***or transported***" in commerce) (emphasis added); *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 748 (W.D. Tex. 2006) (imposing liability under the Lanham Act where goods were never sold, only imported). For instance, the Fifth Circuit recently reaffirmed an earlier opinion in which it had exercised

1125(a)(1)(A).

Likewise, it is not absolutely necessary Plaintiff proves each and every defendant is a United States citizen to establish jurisdiction. The majority of defendants in this suit are United States citizens, including Pioneer Breaker, Toldy, and Vaught. The circuit breakers in question were bought and sold from a Miami, Florida company. Numerous courts have held subject matter jurisdiction for foreign sales can be satisfied as to foreign defendants as long as at least *one* of the defendants allegedly engaged in the counterfeiting activity is a United States citizen. *See, e.g. Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982 (11th Cir. 1995). In *Levi*, the Eleventh Circuit found although the counterfeit products were not manufactured or intended for final sale in the U.S., the court had jurisdiction because:

> The plaintiff is a United States corporation. Some or all of the corporate defendants are United States corporations. All of the individual defendants are United States residents. Counterfeit jeans were discovered at appellants' business premises in Florida, and the evidence suggests that some of the counterfeit jeans were shipped through the United States on their way to Europe. The alleged transactions involved fraudulent documents stating that the jeans were made in the United States. Moreover, many of the alleged illegal activities, including locating and negotiating with prospective buyers and arranging for shipment, occurred in the United States. In light of these facts, we conclude that the district court had subject matter jurisdiction over [the plaintiff]'s claims.

*Id.* Likewise, in *TNT USA, Inc v. TrafiExpress, S.A. de C.V.*, the district court found the citizenship requirement was met where the "majority" of defendants were Mexican citizens, but there was at least one defendant who was a United States citizen. 434 F. Supp. 2d 1322, 1328 (S.D. Fla. 2006). District

---

extraterritorial jurisdiction over sales that took place exclusively in Saudi Arabia, where the defendant was a United States corporation engaged in interstate and foreign commerce, and its "processing, packaging, transportation, and distribution activities took place in the United States." *Am. Rice, Inc. v. Prods. Rice Mill, Inc.*, 518 F.3d 321, 328 (5th Cir. 2008) (citing *Am. Rice, Inc. v. Arkansas Rice Growers Co-op. Assn*, 701 F.2d 408, 414-15 (5th Cir. 1983). The Fifth Circuit concluded that because steps were taken in the United States which were "essential steps in the course of business consummated abroad," the exercise of extraterritorial jurisdiction was proper, notwithstanding the fact that the "consummation of the unlawful activity occurred on foreign soil." *Id.*

courts in other circuits have followed suit. *See NewMarkets Partners LLC v. Oppenheim*, 638 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2009) (finding a German corporation could be treated as a United States citizen for the purposes of the jurisdictional analysis because it had "a substantial presence in the United States"); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 126 F. Supp. 2d 328 (S.D.N.Y. 2001) (finding the individual defendant's "Italian citizenship...cannot serve as a shield against the application of the Lanham Act," where he was the controlling force behind another citizen defendant, he had lived in the United States at times, and he had owned businesses here).

The present case is very similar to *Levi* and the other cases quoted above, in that many of the defendants are United States citizens, Gonzalez has long done business in the United States, the counterfeit goods were shipped from a location in the United States, and the goods were transported throughout the United States (some more than once). "[P]ermitting the Lanham Act's extraterritorial analysis to hinge on an alleged infringer's citizenship status would provide a safe haven for resident alien infringers." *See A.V. by Versace*, 126 F. Supp. 2d at 338. Thus, the bare fact Gonzalez is not technically a citizen of this country—although he is integrally connected to the United States and has long had extensive business dealings here—shall not defeat the Court's exercise of subject matter jurisdiction over the extraterritorial claims in this case.

### 2. Effect on United States commerce

Second, Gonzalez's activities undoubtedly had an effect on United States commerce. The Fifth Circuit has rejected the requirement the effect on United States commerce must be "substantial," and has noted that "*some* effect on United States commerce, as opposed to a substantial effect, may be sufficient" to satisfy the second factor. *Paulsson Geophys. Servs., Inc. v. Sigmar*, 529 F.3d 303, 307 (5th Cir. 2008) (emphasis in original); *Am. Rice*, 701 F.3d at 414 n. 8. But either way, Gonzalez's activities satisfy the test, as he allegedly purchased 25,700 counterfeit breakers (in several shipments)

from Miami Breaker, had them transported from Florida to Texas, and from Texas to Mexico, ultimately re-imported some 16,100 of the breakers back into the United States and transported them back to Miami Breaker, where he returned them. These acts alone show a sufficient effect on United States commerce to enable this Court to exercise jurisdiction over the foreign sales of these breakers.

The Supreme Court also explicitly noted in *Steele* that the defendant's "competing goods could well reflect adversely on [the plaintiff]'s trade reputation in markets cultivated by advertising here as well as abroad." 344 U.S. 286. The same considerations apply to this case, as Gonzalez was buying from a United States company and selling his breakers in Nuevo Laredo, which is located right on the Texas border. His sales of counterfeit breakers could well have reflected adversely on Plaintiff's trade reputation in markets—Texas and Mexico—in which it has long done business.

3. **Existence of a conflict with foreign law**

As for the third factor, it is undisputed there is no conflict in this case with the trademark laws in Mexico, as the Supreme Court has specifically found sales in Mexico do not create such a conflict. *Id.* Thus, this factor supports the exercise of jurisdiction.

Based on the foregoing, the Court finds it has the clear power to exercise subject matter jurisdiction over the claims against Gonzalez for violating the Lanham Act. His motion to dismiss the claims against him for lack of subject matter jurisdiction is therefore DENIED.

II. **Defendant Gonzalez's Opposed Motion for Summary Judgment [#154]**

a. **Summary judgment standard**

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the

11

nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98 (5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial, and may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the non-movant's burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

**b.    Discussion**

In his motion for summary judgment, Gonzalez asserts there is no evidence the breakers he sold in Mexico in 2005 and 2006 were counterfeit, as Plaintiff undisputedly did not inspect the breakers Surtidora or Border Electric purchased from Miami Breaker and resold in Mexico. Def.'s Mot. Summ. J. at 2. He claims although Plaintiff inspected ***other*** breakers supplied by Miami Breaker and determined them to be counterfeit, this cannot be used as evidence the ones supplied to him were counterfeit. *Id.* Because it is undisputed Miami Breaker also has authentic breakers for sale, he claims an "inference in favor of [Plaintiff] is not justified," and Plaintiff cannot rely on "circumstantial evidence" to prove the breakers sold by Surtidora and Border Electric in Mexico were counterfeit. *Id.*

at 2-3

Unfortunately for Gonzalez, the inference in favor of Plaintiff is wholly justified—indeed, it is mandated by long-standing Fifth Circuit precedent which requires every court at the summary judgment stage to "construe[] all facts and inferences in the light most favorable to the nonmoving party." *Richter*, 83 F.3d at 98. Moreover, Plaintiff has responded with more than enough evidence to create a fact issue on this point. Consider the following, which is undisputed: Gonzalez purchased 25,700 Square D breakers from Miami Breaker. He sold 9,600 of those breakers in Mexico through his corporations, Surtidora and Border Electric. However, some of the breakers that were ordered on behalf of Border Electric could not be sold because the customer cancelled the order. Therefore, 16,100 of the breakers were re-imported into the United States and returned to Miami Breaker. Gonzalez does not dispute any of these facts—he merely disputes whether any of the breakers in question were counterfeit. Square D responds it had its expert, Bill Rezac, inspect over 5,000 of the 16,100 breakers that were returned to Miami Breaker by Gonzalez.[8] Plaintiff submits Rezac's opinion those 5,000 were counterfeit Square D breakers, reflecting counterfeit versions of Square D's marks. *See* Pl.'s Resp. [#175], Ex. 1 ("Rezac Aff.") at ¶¶ 6-9. Furthermore, Plaintiff submits evidence the breakers Gonzalez resold in Mexico were acquired from the same source as the breakers that were returned and inspected (namely, from Orazio Licciardello, d/b/a GBP Distrubutors, who in turn got them from Montelectric, S.A.). *See id.* at Ex. 9 (Miami Breaker Inventory Report of QO® products from 2005 and 2006). Gonzalez does not submit any evidence to contradict Rezac's expert testimony, but simply claims Plaintiff is relying on "circumstantial evidence" to imply the other breakers were

---

[8]Based on inventory records provided by Miami Breaker, the counterfeit circuit breakers Plaintiff inspected appear to be the same circuit breakers that were returned by Gonzalez; and, even considering the possibility they are not the same ones, Plaintiff asserts the breakers it inspected were without doubt acquired by Miami Breaker from the same original sources as the Gonzalez breakers: GBP Distributors, and Montelectric, S.A. *See* Pl.'s Resp. at Ex. 7 (Anselmetti Depo.) at 127-44; Ex. 8 (inventory report); Ex. 6 (Rezac Depo.) at 5-6, 9, 19-20, 22-26, 55-56.

also counterfeit. Obviously, Gonzalez cannot defeat summary judgment by attacking Plaintiff's evidence as circumstantial. Because Plaintiff has created a genuine fact issue as to whether the breakers Gonzalez purchased from Miami Breaker were counterfeit, Gonzalez's motion for summary judgment is DENIED.

### III. Defendant Gonzalez's Motion to Sever [#161]

In his motion to sever, Gonzalez asserts he, Surtidora, and HESCO (the "Gonzalez Defendants") are misjoined with Vaught, Duncan, and Pioneer Breaker (the "Pioneer Defendants") because Plaintiff has dropped its original allegations that Gonzalez sold counterfeit breakers to or through the Pioneer Defendants. Gonzalez is correct on this point; Plaintiff has specifically stated (in its motion to file an amended complaint) the First Amended Complaint "divorces" Plaintiff's claims against the Gonzalez Defendants from its claims against the Pioneer Defendants. *See* Mot. Amend at 4. Thus, Gonzalez claims the two sets of defendants are misjoined under Federal Rule of Civil Procedure 20, and the claims against the Gonzalez Defendants should be severed from the claims against the Pioneer Defendants pursuant to Rule 21. *See* Gonzalez's Mot. Sever [#161] at 2-3.

Pursuant to Rule 21, the court may "at any time, on just terms," add or drop a party. Fed. R. Civ. P. 21. Rule 21 is a mechanism for remedying the misjoinder of parties (as well as an appropriate vehicle to sever or dismiss the claims of properly joined parties). *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983). Generally, "the impulse [under the Federal Rules of Civil Procedure] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Despite this presumption, "the trial court has broad discretion to sever issues to be tried before it" when doing so advances the administration of justice and no party suffers prejudice by virtue of the severance. *Applewhite*, 67 F.3d at 574; *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500,

14

505 (5th Cir. 1994). But a party will not be entitled to a severance when it would "prolong the ultimate termination of an action, add to the cost of resolving the lawsuit, create duplicitous litigation or increase the likelihood of inconsistent verdicts." *El Aguila Food Products, Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 960 (S.D. Tex. 2001) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1689).

To determine whether defendants are properly joined under Rule 20(a), a court must consider (1) whether any right to relief is asserted against them "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) whether there is any question of law or fact common to all defendants in the action. Fed. R. Civ. P. 20(a)(2). Both requirements must be met for the parties to be properly joined. *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 n. 11 (5th Cir. 1995).

Thus, the first question is whether the claims against the Pioneer Defendants and the Gonzalez Defendants "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" under Rule 20(a). Plaintiff claims they do arise out of the same transaction or occurrence, as the source of all the allegedly counterfeit breakers for both sets of Defendants was Miami Breaker, who in turn obtained them from GBP and Montelectric. Specifically, Plaintiff presents evidence Gonzalez (using a number of different entities he owns or controls) purchased 25,700 allegedly counterfeit breakers from Miami Breaker, sold some 9,600 of those circuit breakers through his companies, and returned some 16,100 of the remaining circuit breakers to Miami Breaker. *See* Pl.'s Resp. [#177] at Ex. 3 (Miami Breaker invoices); Ex. 4 (shipping documents); and Ex. 5 ("Gonzalez Depo.") at Vol. 1, 66-57, and Vol II. 200-211. The circuit breakers returned by Gonzalez were acquired from GBP Distributors and Montelectric. *Id.* at Anselmetti Depo. at 127-144; Ex. 8 (inventory report); Rezac Depo. at 5-6, 9, 19-20, 22-26 and 55-56.

15

Likewise, Plaintiff presents evidence the Pioneer Defendants purchased counterfeit Square D breakers from Miami Breaker. Plaintiff claims Pioneer and Toldy purchased and offered for sale at least 71 counterfeit circuit breakers obtained from Miami Breaker in 2005 or 2006. These breakers were inspected as part of Pioneer's inventory on December 11, 2007. Plaintiff presents evidence the breakers were determined to be counterfeit, and were determined to have been acquired from the same original sources as those purchased by the Gonzalez Defendants: GBP Distributors and Montelectric. *See* Rezac Depo. at 5-6, 9, 19-20, 22-26 and 55-56. The Court finds the foregoing allegations and evidence are sufficient to conclude the claims against all the Defendants in this case "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" under Rule 20(a)

Furthermore, there are without doubt common questions of law and fact among the two sets of Defendants, including the fact all the Defendants allegedly imported, sold, offered for sale, and/or transported counterfeit breakers in violation of §§ 1114 and 1125 of the Lanham Act, and did so willfully. To prove these claims Plaintiff will have to offer much of the same evidence, including evidence of the registration and validity of its trademarks, and Miami Breaker inventory documents and testimony. Furthermore, all the Defendants have challenged whether the breakers were, in fact, counterfeit; therefore, Plaintiff will also have to respond to all Defendants with testimony and reports by Square D witnesses regarding the authenticity of the breakers and the characteristics of a counterfeit breaker (which are shared by all the breakers in this case), evidence of the destructive testing it conducted on the counterfeits, and evidence of damage to Plaintiff's good will and reputation as a result of the counterfeiting activities. Plaintiff claims it will present the same fact witnesses in support of its allegations against all the Defendants. *See* Pl.'s Resp. [#177] at 2.

As a final consideration, the Court notes severance of this case would prolong the ultimate termination of this action—which has was filed over two years ago and has already been pending in

this Court far too long—would add to the cost of resolving the lawsuit, and would cause the Court, the parties, and the witnesses to be involved in unnecessarily duplicitous litigation. Gonzalez's motion to sever this case is therefore DENIED.

## IV.    Plaintiff's Motion for Partial Summary Judgment [#180][9]

Although Plaintiff's Motion for Partial Summary Judgment was filed over 18 days ago, none of the Defendants has filed a timely response, and thus the Court may the motion grant as unopposed. *See* Local Rule CV-7(d). Nonetheless, the Court has considered the motion on its merits (as far as it is able, having no response), and has determined from its review the motion should be GRANTED.

### a.    Background

Plaintiff requests summary judgment against Pioneer Breaker and Gordon Vaught for their violations of §§ 1114(1) and 1125(a)(1) of the Lanham Act, as they both admit their involvement in the purchase, sale, and transportation of 30,981 counterfeit circuit breakers. The facts are as follows: over a seven-month period in 2005 and 2006, Pioneer Breaker acquired 54,400 QO® 2020 circuit breakers from Vaught, which Pioneer Breaker later resold to Breakers Unlimited. *See* Toldy Depo. at 48; Pl.'s Mot. Summ. J. [#180] at Ex. 6 (Pioneer Breaker invoices to Breakers Unlimited). Vaught testified in his deposition he obtained these breakers from a man in Mexico, "Arturo Garcia," in exchange for a commission.[10] *See id.* at Ex. 5 ("Vaught Depo.") at 190-93. For the first four shipments, Pioneer Breaker provided Vaught with contact kits in exchange for the breakers after they were inspected. *Id.* For the fifth and final shipment—which was delivered on January 3, 2006, and contained 33,600 breakers—Pioneer Breaker never provided any product or payment to Vaught. *See*

---

[9]The same standards apply to this motion as those stated *supra*, section II(a).

[10]To date, no one (including Vaught) has been able to locate Garcia. *See* Vaught Depo. at 193.

Toldy Depo. at 100.

Pioneer Breaker sold each of the five shipments of breakers to Breakers Unlimited. *See* Pl.'s Mot. Summ. J. [#180] at Ex. 4 ("Toldy Depo. in *Breakers*"[11]) at 48-71; Ex. 10 ("Vaught Depo. in *Breakers*") at 120-35, 138-45. The first four shipments totaled 20,800 breakers, and were resold by Breakers Unlimited. The final shipment sent in January 2006 totaled 33,600 breakers, and was never resold. *Id.* at Ex. 6.

Through its previous lawsuit against Breakers Unlimited, Plaintiff inspected Breakers Unlimited's inventory and discovered over 30,000 breakers supplied by Pioneer Breaker (in the fifth shipment) that were still in Breaker Unlimited's inventory and had not been resold. Rezac Aff. at ¶ 6. The remainder of the 54,400 breakers that were obtained from Pioneer Breaker had already been resold. Breakers Unlimited tendered a total of 30,981 Pioneer Breaker-supplied breakers to Plaintiff. *Id.* at ¶ 7. Bill Rezac, a certification engineer employed by Plaintiff, testifies he has inspected each and every one of the 30,981 QO® 2020 breakers, and concluded each one was counterfeit and displayed counterfeit versions of Plaintiff's trademarks. *Id.* at ¶ 10. Rezac also supervised the testing of samples of the Pioneer Breaker-supplied breakers, which representatives for Pioneer Breaker also attended. *Id.* at ¶ 12. The breakers were put through the testing procedures set out by Underwriting Laboratories ("UL"), specifically UL standard 489 ("UL489"). *Id.* at ¶ 13. 21 total breakers were put through UL489 testing in June 2008. *Id.* at ¶ 15. Although Plaintiff's authentic QO® 2020 breakers have been tested and passed UL489 testing, the 21 Pioneer Breaker-supplied breakers did not comply with UL489 standards. *Id.* Based on his visual inspection, the above-described testing, and his experience within the circuit breaker industry, Rezac concludes in his affidavit the 30,981 circuit breakers Breakers

---

[11]The designation "in *Breakers*" indicates the deposition was taken in Plaintiff's previous case against Breakers Unlimited, styled *Square D v. Breakers Unlimited, Inc.*, N.D. Ind. Case No. 1:07-cv-806.

Unlimited acquired from Pioneer Breaker are counterfeit circuit breakers that were not manufactured by Plaintiff or anyone authorized by Plaintiff. *Id.* at ¶ 16.

Plaintiff will prevail on its Lanham Act claims if it establishes (1) it possesses valid trademarks entitled to protection under the Lanham Act, and (2) the defendant used similar marks in commerce in a manner likely to confuse or deceive consumers who have come to recognize Plaintiff's marks. *Philip Morris USA Inc. v. Lee*, 549 F. Supp. 2d 839, 847 (W.D. Tex. 2008); *accord* 15 U.S.C. §§ 1114(1), 1125(a).

Plaintiff has unquestionably shown it has protectible rights in the trademarks in question, as Plaintiff has presented undisputed evidence the marks are registered with the United States Patent and Trademark Office ("USTPO") and have been utilized by Plaintiff in connection with circuit breakers for over five years. *See* Rezac Aff. at par 4; Pl.'s Mot. Summ. J. at Ex. 2. Marks registered with the USPTO are presumed valid. *See Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 443 n.2 (5th Cir. 2000). Moreover, "[o]nce a registered mark has been used continuously for five years from the date of registration, it becomes 'incontestable.'" *Lee*, 549 F. Supp. 2d at 847 (citations omitted).

Secondly, it is undisputed Toldy, on behalf of Pioneer Breaker, acquired 54,400 Square D breakers from Vaught and sold them to Breakers Unlimited. Of these, Breakers Unlimited retained approximately 30,981 of them. These retained breakers were tested by Plaintiff's expert, Mr. Rezac, and he has concluded they contain numerous counterfeit characteristics, and are not authentic breakers. Rezac Aff. at ¶¶ 11-16. He also supervised and observed the testing of a sampling of these breakers under UL489's testing standards, and found they did not comply with even basic testing standards. *Id.* Thus, Plaintiff has presented undisputed evidence at least 30,981 of the breakers sold by Pioneer Breaker to Breakers Unlimited are not authentic breakers and bear counterfeit versions of Plaintiff's trademarks.

The Court notes that although the "likelihood of confusion" analysis generally involves a factual inquiry into several different factors, this is not true in the case of a counterfeit mark. *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1007 n.11 (S.D. Tex. 2000). In the case of a counterfeit mark, courts have held "likelihood of confusion is clear." *Id.* (citing *Microsoft Corp. v. Grey Comp.*, 910 F. Supp. 1077, 1088 (D. Md. 1995) ("Where, as here, the goods distributed by Defendants are intentional copies and virtually identical to the trademark owner's goods, likelihood of confusion may be established at the summary judgment stage."); *Microsoft Corp. v. CMOS Technologies, Inc.*, 872 F. Supp. 1329, 1335 (D.N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety. Under these circumstances, the likelihood of consumer confusion, mistake, or deception is clear.")).

The Court also notes that—although Defendants have made no effort to establish their good faith, as they have not responded to the motion for summary judgment in any way—Plaintiff is not required at this point to show either defendant ***intended*** to infringe its trademarks, as good faith is not a defense to trademark infringement (although it may be germane to whether the defendant acted willfully). *See Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 596 (5th Cir. 1985) (holding good faith is not a defense to trademark infringement).

Accordingly, the Court finds Plaintiff has established both that (1) it possesses valid trademarks entitled to protection under the Lanham Act, and (2) Vaught and Pioneer Breaker used similar marks in commerce in a manner likely to confuse or deceive consumers who have come to recognize Plaintiff's marks, with respect to the 30,981 breakers that were examined and tested by Plaintiff's expert. Vaught and Pioneer Breaker admit they transported and sold the breakers in question, and they

have submitted absolutely no evidence to defeat Plaintiff's expert testimony and raise a genuine issue of fact about either of the two factors Plaintiff is required to show in order to prove its Lanham Act claims. Based on the foregoing, and because the motion is unopposed, the Court GRANTS Plaintiff's partial motion for summary judgment on Plaintiff's Lanham Act claims against Pioneer Breaker and Vaught for their purchase, transportation, and sale of 30,981 QO® 2020 circuit breakers bearing counterfeit versions of Plaintiff's trademarks.[12]

## V. Defendants Pioneer Breaker/Tamas Toldy's Motion for Partial Summary Judgment [#183]

Pioneer Breaker and its President, Toldy, seek partial summary judgment on the RICO, civil conspiracy, and certain of the trademark infringement claims against them. Because counsel for Plaintiff represented at the status conference hearing it is voluntarily dismissing the RICO and civil conspiracy claims against all Defendants, the portion of the motion for summary judgment dealing with those claims is DISMISSED as moot, without prejudice to refiling should those claims be reasserted.

Furthermore, like the foregoing motion, this motion for partial summary judgment was filed over 18 days ago and the Plaintiff has failed to file a timely response.[13] Thus, the Court may grant it as unopposed. *See* Local Rule CV-7(d). Nevertheless, the Court has considered the motion on its merits (as far as it is able, having no response) and enters the following.

### a. Circumstantial Evidence

---

[12]The Court notes for the record that because these 30,981 breakers do not represent all the allegedly counterfeit breakers sold, purchased, and transported by Pioneer Breaker and Vaught, there remain factual issues as to, at the very least, (1) their liability under the Lanham Act for approximately 23,000 additional breakers, (2) whether they acted willfully, and (3) Plaintiff's damages under the Lanham Act.

[13]The Court notes there may have been some confusion on Plaintiff's part as to whether it was required to file a response, as the Court indicated orally it was going to overrule this motion during the status conference, which was held on the day the response was due.

As for the trademark infringement claims, Pioneer Breaker and Toldy claim summary judgment must be granted for those infringement claims that are based on the first four shipments of QO® 2020 breakers to Breakers Unlimited in 2005.  As has been stated numerous times in this order, it is undisputed Toldy (on behalf of Pioneer Breaker) acquired 20,800 QO® 2020 breakers from Vaught in 2005 in four shipments, and resold all those breakers to Breakers Unlimited in Indiana.  Breakers Unlimited in turn resold all 20,800 breakers from those first four shipments to its customers.  Apparently, none of them were returned or complained about.  Some months after the first four shipments, Pioneer Breaker and Toldy acquired 33,600 more QO 2020 breakers from Vaught, and again sold them to Breakers Unlimited (for a total of 54,400 breakers).  The breakers that were tested by Plaintiff's expert and found to be counterfeit come from this fifth shipment, part of which was retained by Breakers Unlimited.

In their motion for partial summary judgment, Defendants object to Plaintiff using "circumstantial evidence" of the counterfeit breakers in the fifth shipment to prove the breakers in the first four shipments were also counterfeit.  But it is undisputed the breakers in *all* the shipments came from the same person (Vaught, who acquired them from Arturo Garcia, in Mexico) and were packaged similarly in non-standard packaging (in large cardboard boxes with open-top trays).  Plaintiff is certainly entitled to use circumstantial evidence at trial to attempt to prove the breakers in the first four shipments were also counterfeit, and it follows circumstantial evidence may operate to rase a genuine issue of material fact sufficient to defeat a motion for summary judgment.  Because Pioneer Breaker and Toldy have not carried their initial burden of showing there is no genuine issue of material fact on this issue and judgment should be entered as a matter of law, *see* Fed. R. Civ. P. 56(c), summary judgment cannot be granted on this ground.

**b.    Collateral Estoppel**

Finally, Pioneer Breaker and Toldy request that—if the Court determines the trademark infringement claims arising out of the first four shipments should survive the summary judgment stage (as it has)—the Court grant summary judgment on the issue of collateral estoppel. They claim the issue of the damages suffered by Plaintiff due to the alleged infringement in this case has already been litigated in its prior case against Breakers Unlimited.

"[A] right, question, or fact distinctly put in issue and directly determined as a ground of recovery by a court of competent jurisdiction collaterally estops a party or his privy from relitigating the issue in a subsequent action." *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. 1982). Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from re-litigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party. *United States v. Mendoza*, 464 U.S. 154, 159 n. 4 (1984). Defensive use of collateral estoppel promotes judicial economy because it prevents a plaintiff from re-litigating identical issues by "switching adversaries," and affords plaintiff a strong incentive to join all potential defendants in the first action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). For collateral estoppel to apply, three criteria must be shown: (1) the issue at stake is identical to the one involved in prior litigation; (2) the issue has been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action. *Freeman v. Lester Coggins Trucking, Inc.*, 771 F.2d 860, 862 (5th Cir. 1985).

In 2007, Plaintiff brought trademark infringement and counterfeiting claims against Breakers Unlimited, Inc. in federal court in Indiana. *See* Case No. 1:07-CV-806-WTL-JMS. Plaintiff's damages expert in that case, Daniel Gill, apparently testified his damages estimate was based on Breakers Unlimited's sale of five shipments of allegedly counterfeit circuit breakers—the same five

shipments at issue in the present case.  *See* Def.'s Mot. Part. Summ. J. [#183] at Ex. C at 66-69 (direct examination of Gill).  The case went to trial in June 2009, and on June 25, 2009 the jury found Breakers Unlimited liable to Plaintiff for trademark infringement.  *Id.* at Ex. D (verdict form). However, the jury also found Plaintiff "was damaged as a result of Breaker Unlimited's trademark infringement in the amount of" $0.  *Id.*

Because the Court has only a very condensed version of Mr. Gill's testimony on the record, it is difficult to determine whether the issue of collateral estoppel applies in this case, especially without knowing to what specific damages Plaintiff's experts will testify in the upcoming trial.  The Court simply cannot decide this issue in a vacuum, without being fully aware of the damages issues that were previously litigated or the damages issues that are to be litigated in this case.  Therefore, the present motion for partial summary judgment is CARRIED solely on the issue of collateral estoppel, which may be re-urged at trial if the evidence and testimony warrant.

## Conclusion

In accordance with the foregoing,

IT IS ORDERED that, based on the representation of all parties at the scheduling conference that Defendants Trans-Discovery and Christina Toldy Duncan have settled with the Plaintiff, Defendant Trans-Discovery's Motion for Summary Judgment [#134], Defendant Trans-Discovery's Motion to Sever [#170], and Defendant Christina Toldy Duncan's Motion for Summary Judgment [#182] are all DISMISSED AS MOOT.

IT IS FURTHER ORDERED that  Defendant Gonzalez's Opposed Motion to Dismiss for Lack of Jurisdiction [#153] is DENIED.

IT IS FURTHER ORDERED that Defendant Gonzalez's Opposed Motion for

Summary Judgment [#154] is DENIED.

IT IS FURTHER ORDERED that Defendant Gonzalez's Opposed Motion to Sever [#161] is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment [#180] is GRANTED.

IT IS FINALLY ORDERED that Defendants Pioneer Breaker and Tamas Toldy's Motion for Partial Summary Judgment [#183] is DISMISSED as moot in part, DENIED in part, and CARRIED in part, in accordance with the foregoing order.

SIGNED this the 18th day of December 2009.

_____
UNITED STATES DISTRICT JUDGE